IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

REO L. COVINGTON,

                      Plaintiff,                      OPINION AND ORDER

    v.

                                                        13-cv-379-wmc

SERGEANT STEINERT and MARIE SVEC,

                      Defendants.

---

*Pro se* plaintiff Reo Covington is proceeding on claims that prison staff at Waupun Correctional Institution violated his First Amendment rights when: (1) Sergeant Steinert, a correctional officer, and Marie Svec, a social worker, opened, read and confiscated a letter from his mother; and (2) Svec recommended that Covington stay in a maximum security prison in retaliation for grievances he filed against her.[1]  Now before the court is defendants' motion for summary judgment on both claims (dkt. #25), as well as defendants' motion for leave to make an exhaustion argument (dkt. #36), and plaintiff's motion for assistance in recruiting counsel (dkt. #70).  For the reasons explained below, both of defendants' motions will be granted and judgment will be entered for defendants.  Because plaintiff's claims will be dismissed on the merits, his motion for assistance in recruiting counsel will be denied.

---

[1] Plaintiff also argues for the first time in his brief that defendants violated his due process rights by destroying his letter, but has alleged no due process claim in this case.  Moreover, the court will not now permit plaintiff to add a due process claim because it would be subject to immediate dismissal for failure to state a claim upon which relief may be granted.  Even assuming plaintiff suffered a property deprivation, unauthorized destruction of property by a government actor does not raise a § 1983 claim so long as the state provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984); *Daniels v. Williams*, 474 U.S. 327 (1986).  Wisconsin law provides several post-deprivation procedures for challenging the alleged wrongful taking of property.  *See, e.g.*, Wis. Stat. ch. 893 (containing provisions concerning tort actions to recover damages for wrongfully taken or detained personal property).

UNDISPUTED FACTS[2]

**I.   Mail Incident.**

On September 25, 2012, Covington was housed in the behavioral health unit at WCI, which is designated for inmates with known mental health issues. Defendant Steinert worked in the unit as a relief sergeant and defendant Svec worked as a social worker. According to Covington, early in the day on September 25, he asked Steinert and Svec for a stamped envelope. They denied his request, stating that because he was not indigent he was not entitled to free postage.[3]

Later that day, Covington received two pieces of mail: an order from Dane County Circuit Court and a letter from his mother. Pursuant to DAI Policy #309.04.01, the letter from his mother had been opened and visually inspected for contraband in the mailroom before being delivered to Covington. The officer making the delivery, however, did not know the contents of the letter.[4]

The parties dispute what happened next, though ultimately, these disputes are immaterial for purposes of summary judgment. According to defendants, Covington refused to look at the envelope or even get up from his seat. He told Steinert that he did not want the letter and wanted it returned to sender. Because Covington would not accept the letter, Steinert kept the letter and continued mail delivery to the other inmates. Later, according to

---

[2] The court finds the following facts material and undisputed unless otherwise noted. The facts are drawn from the defendants' proposed findings of fact, as well as plaintiff's evidentiary submissions and responses to defendants' proposed findings.

[3] Covington included the allegations about his request for a stamped envelope only in his declaration, so defendants did not have an opportunity to respond to them. Ultimately, these allegations are immaterial for the purposes of summary judgment.

[4] The parties dispute which officer initially delivered mail to Covington on September 25, 2012, with defendants maintaining that Steinert delivered mail and Covington stating that it was a different officer. This dispute is also immaterial for purposes of summary judgment.

Steinert, he decided to review the letter out of concern as to Covington's reasons for wanting a letter from his mother.

Covington's version of events is slightly different. Covington states that he actually accepted the envelope from his mother, but apparently without opening and reading it, wrote "return to sender" on it and placed it in the cell bars for outgoing mail pick-up. As explained in his declaration, Covington did this because he had previously established a coded distress signal with his mother. If she received an envelope from him marked "return to sender," she would call the institution to check on his safety and, if not satisfied, she would come to see him as soon as possible, preferably in the next 24 hours. Although Covington and his mother had apparently never attempted to use this coded distress signal in the past, Covington chose this instance to do so because he wanted help with funds to respond to the order from the Dane County Circuit Court.

Covington states further that Steinert picked up the letter and asked whether it was going out, to which Covington replied, "yes, please put it in the mailbox." According to Covington, Steinert later told him that he had reviewed the contents of the letter out of concern that Covington might be attempting to avoid paying for postage by sending a letter out in the same envelope with the writing "return to sender" on it. Regardless, inmates cannot return mail by using a "return to sender" designation under DOC policy.

There are several reasons for this policy. First, DOC wants to ensure that inmates are not attempting to send contraband or improperly contact someone by using "return to sender." Second, DOC does want to ensure that inmates are not attempting to avoid purchasing postage by sending out correspondence with "return to sender." Third, United

3

States Postal Service policy states that once a piece of mail has been opened, it cannot be "returned to sender" without affixing new postage to the envelope.[5]

At some point after Covington either refused the letter or attempted to send it back to his mother, there is no dispute that Steinert read the letter and learned that there had been a death in Covington's family. Because of Covington's status on the behavioral health unit at the time and the contents of the letter, Steinert reported the information and delivered the letter to defendant Marie Svec, Covington's social worker, who also reviewed the letter and was concerned for Covington.

Svec then contacted Covington and tried to discuss the letter with him. The parties again dispute what specifically happened during the meeting between Svec and Covington. According to defendants, Covington refused to discuss the letter with Svec and said he did not care about his family because he thought they did not care about him. Covington also refused to take the letter from Svec and said he wanted to "return it to sender." Svec told him that he could not refuse the letter by "return to sender." She offered to dispose of the letter by shredding it, which she did. Svec also told Covington that if he changed his mind and wanted to talk about the matter later, she would be available. (Defs.' PFOF ¶¶ 38, 40.)

Under Covington's version of events, when he arrived in Svec's office, she told him that one of his cousins had died. When he asked how she knew that and why he had not been notified, she showed him the letter from his mother. Covington then asked why she had the letter and asked for it back. Svec responded that Steinert had given her the letter out of concern. Svec then told him to calm down and asked him if he wanted to talk about his

---

[5] Because inmate incoming mail is nearly always opened and screened, inmates cannot use "return to sender" without violating United States Postal Service policy. If an inmate chooses to receive no mail at all, however, the mailroom automatically returns letters to senders without DOC officials opening or inspecting it.

cousin's death and refused to give him the letter. Refusing to talk about the letter or his cousin, Covington went back to his cell.

Again, according to Covington, it was not until a couple of days later that Svec told him that she had shredded the letter. (Pl.'s Decl. ¶¶ 10-12.) Covington also denies giving Svec permission to do so. (*Id.* ¶¶ 14-17).

On October 19, 2012, Covington filed a grievance complaining that Steinert and Svec had opened and read his mail. The behavioral health program supervisor at the time, Paul Ludvigson, was contacted by the institution complaint examiner to assist in responding to the grievance. Ludvigson concluded that Steinert and Svec had reviewed Covington's outgoing mail appropriately. The complaint examiner agreed and dismissed the complaint.

II. **Covington's Classification Hearing.**

On April 9, 2013, approximately seven months after the mail incident, Covington had his annual classification hearing. Before the hearing, Covington met with Svec to discuss his request for reclassification and a transfer to medium security. Social workers generally meet with inmates during the month preceding a program review and then provide comments and recommendations to the review committee regarding the inmate's custody classification and institutional placement, as well as program and treatment assignments. In making recommendations, social workers consider the inmate's history, institutional adjustment and other relevant factors.

After meeting with Covington and reviewing his history, Svec recommended that he continue in maximum custody. Among other reasons, Svec's recommendation was based on the fact that Covington had: (1) two pending criminal cases in Dane County (one for robbery and one for criminal damage to property); and (2) received a major conduct report

5

for threats and disobeying orders since his last review. Svec recommended that another classification hearing be held in six months to consider the resolution of the pending criminal cases.

The classification committee unanimously decided that Covington would remain in maximum security. Even though Svec had recommended a six-month recall, the committee also set a one-year recall to review his classification.

OPINION

I.     **First Amendment Claim Relating to the Letter.**

Prisoners have a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Those outside of prison, too, have an interest in corresponding with prison inmates. *Id.* Prison practices and regulations that restrict prisoner correspondence must be "reasonably related to legitimate penological interests." *Id.* at 413 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Plaintiff claims that defendants violated his First Amendment right by opening, reading and keeping his mother's letter. Even fully crediting *plaintiff's* version of events, however, no reasonable jury could find that defendants violated his First Amendment rights.

Without violating the First Amendment, prison officials may seize and read inmate mail as long as the practice furthers an important governmental interest and is no greater restriction than necessary. *See Koutnik v. Brown*, 456 F.3d 777, 784–85 (7th Cir. 2006). Under defendant Steinert's version of events, he opened the letter because he thought it was strange that plaintiff did not want a letter from his mother and was attempting to return it. Under plaintiff's version of events, Steinert opened the letter because he believed plaintiff

may be attempting to send contraband or other mail to someone by writing "return to sender" and without properly paying for postage.

Regardless which version of events is true, however, Steinert's motivation for opening and reading the letter was supported by a legitimate penological interest. If Steinert read the letter out of concern for Covington, his actions were justified by concerns for plaintiff's mental well-being and rehabilitation progress in the behavioral health unit. If Steinert opened and read the letter to look for contraband or to determine whether plaintiff was misusing the mail system, his actions were justified by security concerns. Both justifications involve legitimate and important penological interests that support Steinert's examination of a prisoner's outgoing correspondence. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006); *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). Thus, Steinert's actions in opening and reading the letter do not violate the First Amendment.

Plaintiff also argues that it was improper for Steinert to give the letter to his social worker, defendant Svec, rather than mailing it out or returning it to plaintiff, but the First Amendment prohibits the state from restricting the free expression of ideas. *See Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). By diverting the mail to plaintiff's social worker, Steinert did not seek to stifle any of plaintiff's speech or ideas. A reasonable view of the evidence shows that Steinert's only motivation in forwarding the letter to Covington's social worker was out of concern for plaintiff. *See Davenport v. Rodgers*, No. 15-1622, 2015 WL 9294006, at *2 (7th Cir. Dec. 22, 2015) (unpublished) (concluding that jail officer did not violate First Amendment by reading letter and turning it over to prosecutor because officer had legitimate reason for reviewing mail). Moreover, with the exception of "return to

sender," the letter did not contain speech or ideas from plaintiff, and there is no evidence that Steinert knew or believed plaintiff's use of "return to sender" was a coded message, nor that Steinert was attempting to suppress that message. *Rowe*, 196 F.3d at 782 (rejecting First Amendment claim based on delayed mail, in part, because, "Rowe did not allege that the delays resulted from a content-based prison regulation or practice.") Accordingly, Steinert is not liable for violating plaintiff's First Amendment rights.

Likewise, under plaintiff's version of events, the evidence shows that defendant Svec did not violate plaintiff's First Amendment rights. Although it is certainly more plausible that Svec destroyed the letter because plaintiff said he did not want it, as defendants posit, the court must accept as true plaintiff's statement that he demanded the letter back, and that Svec not only refused to return it to him, but later destroyed the letter instead. Even so, no reasonable jury could conclude that Svec destroyed the letter because she was attempting to suppress plaintiff's speech. First, both sides maintain that Svec had read the letter and knew it contained no speech or ideas by plaintiff, so there was nothing for her to suppress, except the content of his mother's letter that the plaintiff had already refused to read. Certainly there is no evidence suggesting that Svec would be motivated to prevent plaintiff from reading the letter himself, or learning about the contents of the letter. Rather, plaintiff admits that Svec attempted *to talk to him* about the contents of the letter and expressed concern about his cousin's death, and it was he who chose not to discuss his family with her. Even if a jury believed plaintiff's version of events, and that he changed his mind about wanting to know the contents of the letter, they could only reasonably conclude that Svec destroyed the letter because she was annoyed that plaintiff refused to talk to her about its contents or because she thought he may attempt to improperly use the "return to sender"

designation again. No reasonable jury could conclude, however, that she was attempting to, or actually did, suppress plaintiff's speech.

Finally, even if plaintiff had presented evidence indicating that either Steinert or Svec improperly restricted his right to send and receive mail, plaintiff's injury does not rise to the level of a constitutional violation. The Seventh Circuit has pointed out in numerous cases that an isolated delay or interference with mail that is not the result of a prison policy or practice is not cognizable under the First Amendment. *See, e.g., Zimmerman v. Tribble*, 226 F.3d 568, 572–73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to state First Amendment claim); *Rowe*, 196 F.3d at 782 (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); *Willis v. Washington*, 172 F.3d 54 (7th Cir. 1999) (one-time destruction of box placed in prison mail containing correspondence would not allow a reasonable juror to "infer … an ongoing pattern of mail tampering which rises to the level of a constitutional violation"); *Sizemore v. Williford*, 829 F.2d 608 (7th Cir. 1987) (inmate's allegation of intentional and repeated withholding of reading material stated First Amendment claim, contrasting with "isolated instances of loss or theft.").[6] For these reasons, defendants are entitled to summary judgment on plaintiff's First Amendment claim relating to the letter from his mother.

---

[6] *See also Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim); *Daniel v. Cook Cty.*, No. 12 C 9049, 2015 WL 5332346, at *6 (N.D. Ill. Sept. 14, 2015) ("claims of undelivered packages from family and friends" did not state First Amendment claim); *McClure v. Ruth*, No. 12-CV-3116, 2014 WL 4056552, at *2 (C.D. Ill. Aug. 15, 2014) ("An isolated incidence of mail interference is not serious enough to arise to a constitutional violation.").

## II.     Retaliation

Plaintiff also alleges that after he filed a grievance complaining about Svec's actions relating to his mother's letter, Svev retaliated against him by recommending to the classification committee that he remain in maximum security.  At summary judgment, defendants argue that this claim should be dismissed because:  (1) plaintiff did not exhaust his administrative remedies with respect to this claim; and (2) plaintiff cannot prove Svec acted with a retaliatory motive.  Defendants are correct on both grounds.

### A.     Exhaustion.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  To comply with § 1997e(a), generally a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.

To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in Wisconsin Administrative Code ch. DOC 310.  The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation.  *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, the court must dismiss the case.  *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

In the preliminary pretrial conference order, defendants were given until March 6, 2015, to file a motion for summary judgment alleging that plaintiff failed to exhaust administrative remedies. (Dkt. #19 at 3.) Defendants missed that deadline, apparently because the attorney assigned to the case was too busy in March to file a motion. When a new attorney was assigned to the case in July, she realized that plaintiff's retaliation claim appeared to be unexhausted. (Dkt. #36.) Accordingly, she included an exhaustion argument in her motion for summary judgment filed on August 21, 2016, and filed a separate motion requesting leave to bring the exhaustion argument. (*Id.*). Plaintiff has filed a response, objecting that it would be prejudicial to allow defendants to make an untimely exhaustion argument. (Dkt. #39.)

Although defendants' explanation is not particularly satisfying, the court will grant defendants leave to move on exhaustion because the court can perceive no prejudice to plaintiff. Many courts do not provide a separate deadline by which a motion for summary judgment on exhaustion must be brought, but this court has found that addressing exhaustion issues early can relieve the parties (and court) from spending significant time and resources on discovery and litigation of the merits of a case. Additionally, the separate deadline for exhaustion motions allows the parties to litigate exhaustion issues in a streamlined-manner, without following the court's more demanding procedures that apply to other summary judgment motions.

Here, however, plaintiff does not argue that he incurred significant time, expense or effort litigating the merits of his retaliation claim. In fact, he did not even respond in his summary judgment brief to defendants' legal arguments regarding the merits of his retaliation claim, and he does not suggest that he engaged in any discovery efforts related to his

retaliation claim at all. Rather, it appears that defendants are the only ones who incurred extra work by failing to bring the exhaustion argument earlier, as they had to develop arguments both on exhaustion and the merits of the retaliation claim, and they had to follow the court's full summary judgment procedures in doing so. Under the circumstances, the court will permit defendants to make the exhaustion argument.[7]

Defendants' exhaustion argument is simple: plaintiff never filed an inmate complaint alleging that Svec had retaliated against him by recommending that he remain in maximum security. The only offender complaint plaintiff filed with the DOC alleging retaliation against Svec (or any prison staff) was filed on July 1, 2013, approximately three months after his classification hearing and after plaintiff filed his initial complaint in this case. In that complaint, #WCI-2013-12868, plaintiff identified *June 21, 2013,* as the "date of incident" and alleged as follows:

> The refusal, of Ms. Kamphuis, to follow the dictates of a federal court-order, are the catalyst, of the retaliatory actions against me, being perpetrated by her, and Paul Ludvigson, Marie Svec, and a number of other staff at W.C.I. [T]hese overt, and intentional acts are illegal and against my constitutional rights. These arbitrary acts are being done, because I filed grievances and lawsuits against, the wrongs done me and others. This is not right, I demand action, and protection from retaliation, of these and other staff.

(Dkt. #31-3.)

Plaintiff's offender complaint was rejected under Wis. Admin. Code § DOC 310.11(5)(c) on the grounds that he failed to allege sufficient facts upon which redress could be made and, in particular, that the complaint failed to describe a retaliatory action attributable to one person. (*Id.*) Plaintiff appealed the rejection, amending his original

---

[7] Counsel for defendants should not rely on the court's indulgence going forward, particularly where the reasons for missing the court's deadline are similarly thin or the arguable prejudice is greater.

offender complaint to say: "[m]y only issue is retaliation, it is more than one person retaliating against me, [but that] does not make it multiple issues." (*Id.*) He also filed a statement explaining that he disagreed with the rejection of his complaint because:

> My inmate complaint clearly, says that Ms. Kamphuis, in retaliation failed to follow a Federal court order. In that sentence I have alleged sufficient facts upon which redress may be made. I ask you to reconsider your reasons for the rejection of this complaint. But since the retaliation is not limited to a single person[,] I did not allege one person is responsible. ... I will move forward to the courts, just that much sooner if you refuse to accept my valid claim."

(*Id.*)

Although plaintiff argues that this inmate complaint was sufficient to exhaust his administrative remedies, the complaint not only appears on its face to be untimely, it does not address the retaliation claim against Svec on which he is proceeding in this case.[8] Accordingly, his offender complaint failed to provide the notice to the DOC required to exhaust: that plaintiff believed Svec had retaliated against him by recommending that he remain in maximum security in April. Accordingly, plaintiff failed to exhaust his administrative remedies with respect to this claim and it must be dismissed.

### B.     Merits.

Even if plaintiff had exhausted his retaliation claim, however, the claim would still fail on the merits. To prevail on a retaliation claim, a plaintiff must prove three things: (1) he was engaging in activity protected by the Constitution; (2) the defendant's conduct was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected

---

[8] This offender complaint actually seems to be addressing plaintiff's concern that Ms. Kamphuis, the financial programs supervisor, failed to submit the initial partial payment of his filing fee in response this court's June 4, 2013, order directing that plaintiff submit an initial partial payment. (Dkt. #5.) In a letter to the court dated June 21, 2013, the same date as the alleged "incident" identified in the offender complaint, plaintiff alleged that Kamphuis had arbitrarily refused to approve a disbursement request for payment of the initial partial payment. (Dkt. #6.)

activity in the future; and (3) the defendant subjected the plaintiff to adverse treatment because of the plaintiff's constitutionally protected activity. *Gomez v. Randle*, 680 F.3d 859, 866-67 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 555-56 (7th Cir. 2009). Plaintiff's claim fails on the third prong, as he has adduced *no* evidence from which a reasonable jury could find that Svec acted with a retaliatory purpose when she recommended that he remain in maximum security.

Plaintiff's sole basis for believing that Svec had a retaliatory motive was that he had filed a grievance against her before she issued her recommendation. While a plaintiff may rely on "[c]ircumstantial proof, such as the timing of events . . . to establish the defendant's retaliatory motive," *Massey v. Johnson*, 457 F.3d 711, 716-17 (7th Cir. 2006), suspicious timing is almost never sufficient by itself to establish a retaliatory motive. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002).

Here, Svec's recommendation to the classification committee came several months after plaintiff filed a grievance against her. That grievance was dismissed as unsupported. Drawing any relationship between a dismissed grievance and Svec's recommendation would be entirely speculative. *Rockwell Automation, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir. 2008) ("mere speculation or conjecture will not defeat a summary judgment motion").

Moreover, the evidence in the record indicates that there was more than sufficient basis for Svec's recommendation, namely, his pending criminal cases and his major conduct report. Plaintiff presented no evidence to refute defendants' showing that: (1) Svec's recommendation was based on non-retaliatory considerations; or (2) Svec's assessment of plaintiff's adjustment and security classification would have been more favorable but for

plaintiff filing a grievance against her. Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim as well.

ORDER

IT IS ORDERED that:

1. Plaintiff Reo L. Covington's "motion for appointment of counsel" (dkt. #40) is DENIED.

2. Defendants Sergeant Steinert and Marie Svec's "motion for leave to file motion for partial summary judgment based upon plaintiff's failure to exhaust as to his retaliation claim" (dkt. #36) is GRANTED.

3. Defendants' motion for summary judgment (dkt. #25) is GRANTED.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 16th day of February, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

15